UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:08-CV-88

**SCOTT LAMBERGER**                                                                                     **PLAINTIFF**

v.

**INLAND MARINE SERVICE, INC.**                                                             **DEFENDANT**

### MEMORANDUM OPINION

This matter is before the Court upon Defendant's Motion for Summary Judgment (Docket #20). Plaintiff has responded (Docket #21). Defendant has replied (Docket #25). This matter is now ripe for adjudication. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED.

### BACKGROUND

Plaintiff Scott Lamberger was employed as a seaman by Defendant Inland Marine Service, Inc. ("Inland Marine"). Lamberger was injured on or about May 31, 2005, while moving a 55 gallon drum aboard one of Inland Marine's vessels. On October 24, 2005, Plaintiff met with Inland Marine representative Dave Hammond to discuss his injuries and settle his claim. The parties entered into a settlement agreement titled "Agreement for Settlement of Seaman's Claim Against Employer, Release, Covenant Not To Sue and Indemnification." Lamberger received $53,519.45 in exchange for agreeing to the following:

> Scott Lamberger does hereby RELEASE, COVENANT NOT TO SUE, ACQUIT AND FOREVER DISCHARGE, HOLD HARMLESS, PROTECT, INDEMNIFY AND DEFEND Inland Marine Service, Inc., its vessels, barges and equipment, insurers, underwriters, attorneys, employees, crew, agents, servants, predecessors, successors, affiliates and assigns, of and from any and all judgments, liability, actions, causes of action, suits, accounts, promises, interest, claims and obligations (including, but not limited to, all claims for wages, maintenance and/or cure or wrongful discharge), rights and demands whatsoever, whether arising out of contract, law, equity, admiralty, and/or the provisions of 46 App.

> U.S.C. § 688 (commonly termed the "Jones Act."), and/or another federal or state statute, regulation or other law, or by virtue of the General Maritime Law pertaining to or referring to unseaworthiness of navigable vessels and/or the rights of seamen to be maintained and cured at the expense of an employer, including any and all claims for injuries and/or pain and suffering, loss of wages, disability, and all other damages sustained and/or incurred [by] Scott Lamberger from occurrences which took place on or about May 31, 2005, when he was employed by Inland Marine Service, Inc.

Plaintiff signed the agreement, and his signature was notarized.

One portion of the settlement agreement was crossed out, and hand-written into the document were the words "Scott and I have agreed to the deletion of this wording." This statement was initialed by both parties. The part of the settlement agreement that was crossed out contained the following language:

> Scott Lamberger acknowledges his termination of employment from Inland Marine Service, Inc. and as part of this Agreement releases Inland Marine Service, Inc. from any and all claims related in any way to his employment or the termination thereof. Scott Lamberger further agrees not to reapply for employment with Inland Marine Service, Inc.

Plaintiff was called back to work on November 25, 2005. He got off the boat on December 17, 2005, which was approximately eight days prior to the end of his tour. Lamberger believed he had permission from the Captain to leave early in order to handle personal matters at home. Instead, Lamberger received a phone call from Dave Hammond on December 21, 2005, informing him that he had been fired.

On May 28, 2008, Lamberger filed the present suit over his injuries which occurred on May 31, 2005. He alleges Inland Marine is liable under the Jones Act and for breach of the warranty of seaworthiness. Inland Marine has filed a motion for summary judgment, asserting that the settlement agreement prevents Lamberger from bringing these claims before the Court.

**STANDARD**

2

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

A release signed by a seaman is given careful scrutiny. *Davis v. American Commercial Lines, Inc.*, 823 F.2d 1006, 1007 (6th Cir. 1987), *cert. denied*, 484 U.S. 1067 (1988). The seaman is treated as a ward of the court, and the inherent inequality in bargaining is taken into consideration. *Id.* at 1008-09. The Supreme Court dictated the following rule:

3

> [T]he burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with a full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding.

*Garrett v. Moore-McCormick, Co.*, 317 U.S. 239, 248 (1942). Therefore, whoever asserts a seaman's release as a defense is held to a higher standard than would generally be appropriate under state contract law.

Plaintiff argues that Defendant has not met its burden of proving that Plaintiff signed the release with a full understanding of his rights. Plaintiff cites to *Gueho v. Diamond M. Drilling Co.* in support of his argument. 524 F.2d 986 (5th Cir. 1975). In *Gueho*, the Court found that ample evidence existed to find that the plaintiff seaman was led to believe he would maintain his employment after he signed a release. The plaintiff had been involved in a prior settlement which allowed him to keep his job after signing a release, and the insurance adjuster told the plaintiff that the release would have "no effect" on his employment. *Id.* at 987. When the plaintiff was let go on the evening of the day of the settlement, he filed an action to have the settlement set aside. *Id.* The Court found that the defendant "did not bear its burden of demonstrating that the seaman fully appreciated the consequences of the settlement." *Id.*

Defendant asserts that this case is distinguishable from *Gueho* because Plaintiff continued his employment for nearly two months after signing the release, and he was only let go after he left the vessel, without permission, nearly one week before his time aboard the vessel was to end. Thus, Defendant argues that Plaintiff was fired for cause. In addition, Plaintiff was an at-will employee prior to the settlement agreement, and nothing can be construed from the negotiations or the settlement agreement such that a reasonable person would believe they are

entitled to permanent employment.

The Court agrees with Defendant that *Gueho* is distinguishable. In that case, the plaintiff was led to believe he would have employment after signing the release, but he was terminated the same day the settlement was approved, without cause. Here, Plaintiff went back to work for Defendant for nearly two months, and was not terminated until he left the boat early. Although there is disagreement as to whether or not he had permission to leave the boat before his hitch was up, there is still a large difference between this situation and the one in *Gueho* where the plaintiff was fired inexplicably.

Plaintiff has not alleged that the consideration he received was inadequate. In addition, both parties acknowledge that although Plaintiff told Dave Hammond he had spoken with a lawyer, he never actually consulted with an attorney. Plaintiff did, however, receive medical advice from a doctor as to the extent of his injuries. Thus, the main issue is the parties' understanding of Plaintiff's continued employment. Although both parties agree that Plaintiff was entitled to continue working after signing the release (as evidenced by the crossed-out paragraph relating to termination), they disagree as to the terms of Plaintiff's continued employment. Plaintiff alleges it was his belief that he agreed to settle for a lesser amount of money in exchange for being able to keep his job. Moreover, it was his understanding that he was giving up his claim under the Jones Act in order to keep his job.

Defendant has refuted the fact that Plaintiff believed he was entitled to permanent employment by presenting Plaintiff's deposition, in which the following questioning took place between Defendant's attorney (Q) and Plaintiff (A):

> Q: What is it about this agreement that makes you think that you were somehow guaranteed a job? Do you understand my question, Scott?

>A: Yes, I do.  That's what he told me.
>
>Q: What did he tell you?  Tell me exactly what he told you?
>
>A: That I could keep my job.
>
>Q: Okay.  But did you understand when he said that – that if – if you didn't perform the job the way it was supposed to be performed, you could still be fired?
>
>A: Yes.
>
>Q: Okay.  And you understood that if you didn't – if you got back on the boat and you left early, that that's a reason people get fired out on the river, correct?
>
>A: Yes.
>
>Q: Okay.  And you understood when you signed this document that if for some reason they decided you weren't doing the job and – and that they would have the right to then terminate you, correct?
>
>A: Yes.

The above series of questions clearly demonstrates that Plaintiff knew he could still be terminated after he signed the release.  Defendant has properly demonstrated that Plaintiff had a full understanding of his rights.  Defendant has met its burden of proving that no genuine issue of material fact exists regarding Plaintiff's full understanding of his future employment and the release at the time he signed the settlement contract.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

An appropriate order shall issue.